UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IGNACIO GRANDA,

                              Plaintiff,

          – against –

JUAN MANUEL TRUJILLO, SAILBRIDGE
CAPITAL, LLC, and JOE DOE CORPORATIONS
NOS. 1-10,

                              Defendants.

18-CV-03949 (PAE) (RWL)

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
THE AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM AND
FAILURE TO NAME NECESSARY PARTIES**

## TABLE OF CONTENTS

I.    **PRELIMINARY STATEMENT**    **1**

II.    **STATEMENT OF FACTS**    **3**

    A.    Factual Allegations of the Amended Complaint for Purposes of Defendants' Rule 12(b)(6) Motion.    3

    B.    Facts in Support of Rule 12(b)(7) Motion.    7

III.    **ARGUMENT**    **8**

    A.    THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO WITHSTAND A CHALLENGE PURSUANT TO RULE 12(b)(6)    8

        1.    The Amended Complaint Does Not Allege Sufficient Facts to State a Claim Under the FLSA or the NYLL for Unpaid Overtime Wages. ........... 9

        2.    The Amended Complaint Does Not Allege Sufficient Facts to Hold Mr. Trujillo Liable as an "Employer." ........................................................... 12

        3.    The Amended Complaint on Its Face Shows that Plaintiff Is Exempt from the Overtime Requirements of the FLSA and the NYLL. ........................ 16

    B.    BLACKSPARK AND BARRIONUEVO ARE NECESSARY PARTIES    18

    C.    THE AMENDED COMPLAINT FAILS TO STATE CLAIMS UNDER THE NEW YORK DEBTOR & CREDITOR LAW.    21

    D.    THIS COURT SHOULD DECLINE TO EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER THE NEW YORK CLAIMS    22

IV.    **CONCLUSION**    **23**

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 1, 8, 9, 12, 21

*Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) ................................ 13

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) .................................................... 1, 8, 9, 12, 21

*C&K Realty Co. v. ISFC Fabrics Corp.*, 66 A.D.2d 697, 411 N.Y.S.2d 257 (1st Dep't 1978) ........................................................................................................................................ 22

*Carter v. Dutchess Community Coll.*, 735 F.2d 8 (2d Cir. 1984) ................................................. 13

*Chen v. Major League Baseball*, 6 F. Supp. 3d 449 (S.D.N.Y. 2014), *aff'd*, 798 F.3d 72 (2d Cir. 2015)....................................................................................................................... 17, 22

*Circle Indus., Div. of Nastasi-White, Inc. v. City Federal Sav. Bank*, 749 F. Supp. 447 (E.D.N.Y. 1990), *aff'd*, 931 F.2d 7 (2d Cir. 1991)......................................................................... 20

*DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85 (2d Cir. 2013), *cert. denied,* 571 U.S. 1128 (2014)................................................................................................................................. 9, 11, 12

*Fagioli S.p.A. v. GE*, No. 14-CV-7055 (AJN), 2015 U.S. Dist. LEXIS 73219 (S.D.N.Y. June 5, 2015)).......................................................................................................................... 2

*Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 U.S. Dist. LEXIS 50396 (S.D.N.Y. Mar. 31, 2017)....................................................................................................................... 19

*Henderson v. Transp. Group*, No. 09 Civ. 7328 (DLC), 2010 U.S. Dist. LEXIS 66109 (S.D.N.Y. July 1, 2010) .......................................................................................................... 17

*Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2d Cir. 1999).......................................................... 13

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013), *cert. denied,* 572 U.S. 1002 (2014) .......... 13

*Jaliman v D.H. Blair & Co.*, 105 A.D.3d 646, 964 N.Y.S.2d 112 (1st Dep't 2013)..................... 22

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) .............. 8, 9, 11

*McGuirk v. Swiss Re Fin. Servs., Corp.*, No. 14 Civ. 9516 (CM), 2016 U.S. Dist. LEXIS 81338 (S.D.N.Y. Jun. 17, 2016), *aff'd*, 699 F. App'x 55 (2d Cir. 2017)...................... 16, 17, 18

*Ramirez v. RiverBay Corp.*, 35 F. Supp. 3d 513 (S.D.N.Y. 2014) ................................................ 12

*RTN Networks, LLC v Telco Group, Inc.*, 126 A.D.3d 477, 5 N.Y.S.3d 80 (1st Dep't 2015)........................................................................................................................................ 22

*Siji Yu v. Knighted LLC*, No. 15-CV-9340 (KMK), 2017 U.S. Dist. LEXIS 23006 (S.D.N.Y. Feb. 16, 2017).................................................................................................... 16

*Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 U.S. Dist. LEXIS 101875 (S.D.N.Y. Aug. 3, 2016)...................................................................................................... 8, 15

*Walz v. 44 & X Inc.*, 12 Civ. 5800 (CM), 2012 U.S. Dist. LEXIS 161382 (S.D.N.Y. Nov. 7, 2012)........................................................................................................................................ 9

*Whalen v. J.P. Morgan Chase & Co.*, 569 F. Supp. 2d 327 (W.D.N.Y. 2008), *rev'd on other grounds sub nom., Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009) ........................................................................................................................ 12

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003) ........................................... 12

**STATUTES**

28 U.S.C. § 1367(a) ....................................................................................................... 24

29 U.S.C. § 203(d) ......................................................................................................... 13

29 U.S.C. § 203(g) ......................................................................................................... 13

29 U.S.C. § 207 ................................................................................................................ 1

29 U.S.C. § 213(a)(1) ..................................................................................................... 17

N.Y. DEBT. & CRED. LAW § 270 ...................................................................................... 3

N.Y. LAB. L. § 190 ........................................................................................................... 1

N.Y. LAB. LAW § 190(3) ................................................................................................. 13

N.Y. LAB. LAW § 651(6) ................................................................................................. 13

**RULES**

FED. R. CIV. P. 12(b)(6) ............................................................... 1, 4, 8, 9, 19, 24, 25

FED. R. CIV. P. 12(b)(7) ........................................................................ 1, 3, 20, 25

FED. R. CIV. P. 19 ................................................................................................ 20, 21

**REGULATIONS**

29 C.F.R. § 541.203(b) ................................................................................................... 18

29 C.F.R. § 541.203(d) ................................................................................................... 20

29 C.F.R. § 541.601(a) ................................................................................................... 18

## I.    PRELIMINARY STATEMENT

Sailbridge Capital, LLC ("Sailbridge") and Juan Manuel Trujillo ("Mr. Trujillo") (collectively, the "Defendants") submit this Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defendants' Revised Motion") pursuant to Rule 12(b)(6) and Rule 12(b)(7) of the Federal Rules of Civil Procedure, FED. R. CIV. P. 12(b)(6), (7). A copy of the amended complaint in this action ("Amended Complaint"), filed July 27, 2018, is attached as Exhibit "1" to the Declaration of Laura E. Longobardi, Esq., in Support of Defendants' Revised Motion.

The Amended Complaint continues to allege, among other things, that Plaintiff is owed unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, *et seq.*, and the New York Labor Law ("NYLL"), N.Y. LAB. L. §§ 190, *et seq.* Plaintiff has sued Sailbridge and Mr. Trujillo, in his individual capacity, alleging that they both were his "employer" within the meaning of the FLSA and the NYLL. However, despite having had the opportunity to replead, Plaintiff has failed to correct the deficiencies in his original complaint, filed May 2, 2018, as the Amended Complaint still lacks the requisite specificity to assert claims against the Defendants for unpaid overtime under either statute, in accordance with the *Twombly*[1]/*Iqbal*[2] standards. Further, the Amended Complaint continues to lack the requisite specificity to assert a claim against Mr. Trujillo individually. The new allegations of the Amended Complaint contain only incidental examples of Mr. Trujillo's purported "control" over Plaintiff's activities. These do not suffice to hold Mr. Trujillo individually liable as an employer under either the FLSA or the NYLL.

---

[1]   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[2]   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiff's new allegations demonstrate that he falls under one or more exemptions from the overtime requirements of both the FLSA and the NYLL, based both on the duties that he states he was performing and his knowledge of the financial/institutional operations of Sailbridge (information that traditionally would not be within the purview of a non-exempt employee and would only be known to someone at the executive/administrative level). Therefore, the Amended Complaint still does not state a cognizable claim for unpaid overtime wages. Accordingly, both the FLSA and NYLL claims for allegedly unpaid overtime wages should be dismissed, as Plaintiff has not established that he is entitled to overtime wages.

The Amended Complaint still fails to name Blackspark Capital, LLC ("Blackspark") and Jose Maria Barrionuevo ("Barrionuevo"), both of whom are necessary parties subject to the jurisdiction of this Court, as defendants. The only specific allegations in the Amended Complaint concerning Plaintiff's compensation refer to an alleged contract between Plaintiff and Blackspark (the "Blackspark Agreement") (Amended Complaint, ¶ 26). As set forth in the accompanying Affidavit of Juan Manuel Trujillo in Support of Defendants' Revised Motion (the "Trujillo Affidavit"),[3] it appears that only Blackspark, and not Sailbridge or Mr. Trujillo, owes any obligations to Plaintiff under the Blackspark Agreement. Even if Plaintiff can assert a claim for unpaid overtime, it was Barrionuevo, the sole managing member of Blackspark and a managing member of Sailbridge during the period described by Plaintiff in his Amended Complaint, who at all relevant times exercised sole control over Plaintiff's employment at Sailbridge. Further, if Plaintiff did not learn of the financial/institutional operations of Sailbridge through the performance of his exempt duties, he could only have acquired this knowledge through Barrionuevo, with whom Plaintiff has long had a close personal relationship.

---

[3]   It is a "generally accepted principle that the court is not limited to the pleadings on a Rule 12(b)(7) motion." *Fagioli S.p.A. v. GE*, No. 14-CV-7055 (AJN), 2015 U.S. Dist. LEXIS 73219, at \*9 (S.D.N.Y. June 5, 2015).

Barrionuevo's involvement in Plaintiff's employment is evident both on the face of the Amended Complaint and from the facts contained in the Trujillo Affidavit. Despite having had the opportunity to add Blackspark and Barrionuevo as party defendants, Plaintiff has not done so. Thus, the Amended Complaint should be dismissed in its entirety pursuant to Rule 12(b)(7).

Finally, instead of correcting the deficiencies in the original Complaint, Plaintiff added two new causes of action solely against Mr. Trujillo under the New York Debtor & Creditor Law, N.Y. DEBT. & CRED. LAW §§ 270, *et seq.*, claiming that Mr. Trujillo made fraudulent conveyances of Sailbridge's property. Plaintiff has not stated viable causes of action under the Debtor & Creditor Law against Mr. Trujillo, who is not a "debtor" within the meaning of that statute. In any case, as the dismissal of the FLSA claims would eliminate the sole basis for federal subject matter jurisdiction in this Court, the Court should decline to exercise its supplemental jurisdiction over Plaintiff's remaining New York statutory and common law claims, including the new claims under the New York Debtor & Creditor Law.

For these reasons, the Amended Complaint should be dismissed in its entirety, with prejudice.

## II.   **STATEMENT OF FACTS**

### A.   **Factual Allegations of the Amended Complaint for Purposes of Defendants' Rule 12(b)(6) Motion.**

The relevant "facts" alleged in the Amended Complaint, which must be accepted as true for purposes of Defendants' Revised Motion pursuant to Rule 12(b)(6), are as follows:

Sailbridge is a Delaware limited liability company, authorized to transact business in New York (Amended Complaint, ¶¶ 5-6). Sailbridge is an investment management firm headquartered in New York with offices in Mexico City (Amended Complaint, ¶¶ 7-8). Various "John Doe Corporations" are affiliated with Sailbridge (Amended Complaint, ¶ 9), and for each

3

of the calendar years 2015 through 2017, Sailbridge, both in its own right and combined with the affiliated "John Doe Corporations," had annual gross volume of sales made and/or business done of "$500,000 or more" (Amended Complaint, ¶¶ 13-14).

Mr. Trujillo is a resident of New York and is an attorney licensed in the State of New York (Amended Complaint, ¶¶ 16-17). Mr. Trujillo currently is the President, CEO and founder of Sailbridge, and has held an ownership interest in and has been a member of Sailbridge since its formation (Amended Complaint, ¶¶ 18-22).

Plaintiff is a resident of Westchester County, New York. Until approximately July 2015, Plaintiff was employed by Blackspark pursuant to a contract between Plaintiff and Blackspark, under which Plaintiff was paid a salary of $12,500 monthly to perform financial modeling work (Amended Complaint, ¶¶ 4, 25-26). Beginning in approximately August 2015, Plaintiff began working for Sailbridge, and was employed by Sailbridge from approximately August 2015 until February 2018 (Amended Complaint, ¶¶ 37-38). Plaintiff held the title of Managing Director at Sailbridge, but he did not have authority to hire or fire employees, and primarily performed financial modeling work (Amended Complaint, ¶¶ 39-40).

Plaintiff alleges that he "often worked more than 40 hours per week," and claims that "during the week of Thanksgiving 2017 [he] worked at least 65-70 hours," but he was never paid additional compensation for overtime hours worked during his employment with Sailbridge (Amended Complaint, ¶¶ 49-52). During some months, Sailbridge paid a portion of his $12,500 monthly salary, but he never received his full monthly salary from Sailbridge, and from October 2016 through July 2017, Sailbridge did not pay Plaintiff any compensation for work performed (Amended Complaint, ¶¶ 54-57). Sailbridge never provided wage notices or wage statements to Plaintiff (Amended Complaint, ¶¶ 118, 121).

4

The "facts" that Plaintiff pleads concerning Mr. Trujillo with respect to Plaintiff's employment are these:

- On July 16, 2015, Mr. Trujillo instructed Plaintiff to obtain previously requested information from a Salvadoran oil company (Amended Complaint, ¶ 43);

- On October 19, 2016, Mr. Trujillo ordered Plaintiff to provide financial models to a Sailbridge coworker in Mexico City (Amended Complaint, ¶ 44);

- On April 10, 2016, Mr. Trujillo instructed Plaintiff to prepare a presentation draft for a potential Mexican client (Amended Complaint, ¶ 45);

- Plaintiff updated reports and made changes to "White Papers" at Mr. Trujillo's direction (Amended Complaint, ¶ 46);

- During the office move, Mr. Trujillo directed the Plaintiff to use his car to help with the move (Amended Complaint, ¶¶ 47, 79);

- On January 22, 2018, Mr. Trujillo ordered Plaintiff to search for a medical insurance provider to cover Sailbridge employees (Amended Complaint, ¶ 48);

- Mr. Trujillo was a signatory on the bank accounts that were used to pay the Plaintiff, and signed three checks that were used to pay Plaintiff (Amended Complaint, ¶¶ 53, 73, 75, 77);

- Mr. Trujillo promised Plaintiff that when Sailbridge received funds, Mr. Trujillo would pay Plaintiff the amount he was owed (Amended Complaint, ¶ 58);

- After Sailbridge received funds of $500,000, Mr. Trujillo met with the Plaintiff and offered to pay him with a personal check; Plaintiff refused to accept a personal check from Mr. Trujillo and requested that he be paid by company check (Amended Complaint, ¶¶ 70-71);

5

- Mr. Trujillo directed the Plaintiff to follow-up on an insurance claim arising out of the damage (Amended Complaint, ¶ 84);

- In early February 2018, Mr. Trujillo asked the Plaintiff to accompany him to Africa on a business trip; Plaintiff refused to accompany him (Amended Complaint, ¶ 90).

Other allegations in the Amended Complaint that purport to be facts with respect to Plaintiff's employment are instead recitals of the elements of a cause of action and/or mere conclusory statements.  These include:

- The various affiliated "John Doe Corporations" collectively with Sailbridge "form a single enterprise because they engage in related activities, and share common management, ownership, and financial control" (Amended Complaint, ¶ 10);

- "For the three-year period immediately preceding the filing of this [Amended Complaint,] Sailbridge has been an employer engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 203(d)" (Amended Complaint, ¶ 12);

- "At all relevant times, Sailbridge has continuously been an employer within the meaning of the NYLL" (Amended Complaint, ¶ 15);

- Mr. Trujillo "had the power to hire and fire the Plaintiff, supervised and controlled the work schedule and conditions of Plaintiff's employment, determined the rate and method of pay, and maintained records of Plaintiff's employment" (Amended Complaint, ¶ 23);

- "Upon information and belief, Defendant Trujillo exercised sufficient operational control to be deemed Plaintiff's employer under the FLSA and the NYLL" (Amended Complaint, ¶ 24);

- Mr. Trujillo had the authority to direct and supervise the Plaintiff's activities, and was in charge of the day to day operation of the small New York office (Amended Complaint, ¶ 41); and

- Mr. Trujillo gave directions and instructions to the Plaintiff at least on a weekly basis throughout his employment (Amended Complaint, ¶ 42).

As set forth below, not only do these facts fail to establish that Plaintiff is entitled to overtime under the FLSA or the NYLL, they establish that Plaintiff falls under the administrative and/or the "highly compensated individual" exemptions under both statutes.

### B.    Facts in Support of Rule 12(b)(7) Motion.

The facts in support of Defendants' Revised Motion to dismiss the Amended Complaint based on Plaintiff's failure to name necessary parties as defendants are set forth in the accompanying Trujillo Affidavit.[4]  In sum, to the extent that Plaintiff is claiming that he is owed any compensation pursuant to the Blackspark Agreement, then the proper parties – indeed, the only parties – against whom he may obtain that relief are Blackspark and Barrionuevo.  Further, the vast majority of the new allegations in the Amended Complaint either fabricate instances of Mr. Trujillo's control over Plaintiff's employment in order to deflect attention from Barrionuevo's total control or concern confidential matters as to which Plaintiff would have no

---

[4]    We respectfully refer this Court to the Trujillo Affidavit for a full statement of the facts pertinent to this portion of the Memorandum of Law

knowledge unless he had been told them by Barrionuevo.[5]  Either way, Barrionuevo figures prominently in Plaintiff's claims.  Finally, to the extent that Plaintiff is seeking to impose liability on any individual as his employer, that party should be Barrionuevo, who exercised sole control over Plaintiff's employment at Sailbridge.  *See* Trujillo Affidavit, ¶¶ 15-16, 20-55.

### III.     ARGUMENT

#### A.     THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO WITHSTAND A CHALLENGE PURSUANT TO RULE 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 113 (2d Cir. 2013); *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 U.S. Dist. LEXIS 101875, at *9 (S.D.N.Y. Aug. 3, 2016).  However, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The tenet that on a Rule 12(b)(6) motion, a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, which must be supported by facts.  *See Iqbal*, 556 U.S. at 678-79.

The Second Circuit and its constituent district courts have interpreted the *Twombly/Iqbal* standard to define a "plausible" claim as one that "contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Lundy*, 711 F.3d at 114 (quoting *Iqbal*, 556 U.S. at 678).  A plaintiff's establishment of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of

---

[5]   Plaintiff could only have learned knowledge of the financial/institutional operations of Sailbridge in one of two ways: either he was privy to the information because he held a high-level position at Sailbridge (which would make him exempt from overtime requirements), or Barrionuevo told Plaintiff the information.

a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, a plaintiff must plead facts that "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 557. Thus, unless a plaintiff can show that the factual allegations in his complaint have "nudged [his] claims across the line from conceivable to plausible," the complaint must be dismissed. *Id.* at 570; *see Iqbal*, 556 U.S. at 680. The standard is met when the plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Walz v. 44 & X Inc.*, 12 Civ. 5800 (CM), 2012 U.S. Dist. LEXIS 161382, at *11-*12 (S.D.N.Y. Nov. 7, 2012) (dismissing allegations of unpaid overtime under the FLSA for failure to plead supporting facts); *see also Lundy*, 711 F.3d at 115 (affirming dismissal of FLSA claim because the plaintiffs' conclusory allegations merely "invited speculation," and did "not amount to a plausible claim under FLSA").

In light of these requirements, the questions before this Court are whether the Amended Complaint sufficiently pleads facts to state claims for relief that are plausible on their face (1) for allegedly unpaid overtime wages under the FLSA or the NYLL; and (2) against Mr. Trujillo as an alleged "employer" under the FLSA or the NYLL. The Amended Complaint does not.

### 1. The Amended Complaint Does Not Allege Sufficient Facts to State a Claim Under the FLSA or the NYLL for Unpaid Overtime Wages.

In order to plead a "plausible" claim for the failure to pay overtime under the FLSA, a plaintiff must assert the existence of an employer-employee relationship between the parties, the existence of some kind of interstate activity in the employee's work and the approximate number of unpaid overtime hours worked. This last requirement generally means that the plaintiff "must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114; *see DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 88 (2d Cir. 2013), *cert. denied*, 571 U.S. 1128 (2014); *Walz*, 2012 U.S. Dist. LEXIS 161382, at *9.

9

The totality of Plaintiff's "factual" pleading regarding his overtime claim is:

> 49.    Plaintiff often worked more than 40 hours per week.
>
> 50.    For example, during the week of Thanksgiving 2017 Plaintiff worked at least 65-70 hours.
>
> 51.    Plaintiff did not receive any compensation whatsoever for regular hours worked or overtime during the week of Thanksgiving 2017.
>
> 52.    Plaintiff was never paid additional compensation for overtime hours worked during his employment with Sailbridge.

Amended Complaint, ¶¶ 49-52.

Only Paragraph 51 is new; yet these allegations still are not sufficient.  Paragraphs 49 and 51-52 of the Amended Complaint do no more than paraphrase the language of the FLSA.  While Paragraph 50 purports to assert that Plaintiff "worked" more than forty hours "during the week of Thanksgiving 2017," this allegation provides no other information as to what Plaintiff was doing, whether it was compensable work, for whom he was doing it, the starting and ending dates of Plaintiff's regular workweek[6], whether the "week of Thanksgiving 2017" spanned Plaintiff's regular workweek, or whether the "week of Thanksgiving 2017" spanned one or more of Plaintiff's regular workweeks.

Indeed, nowhere in the Amended Complaint does Plaintiff provide any specificity concerning: the number of hours that he was scheduled to work at Sailbridge, the days he was scheduled to work at Sailbridge, when his "workweek" started or ended, where he was supposed to work for Sailbridge, what "financial modeling work" he performed for Sailbridge, who assigned or supervised his financial modeling work at Sailbridge, when or how or how much he

---

[6]    The FLSA mandates payment of overtime for hours worked over forty in a given "workweek," which is defined as no more than seven consecutive days.  29 C.F.R. § 778.105.

was to be paid at Sailbridge – or indeed, any details at all concerning his employment arrangement *at Sailbridge*.

Plaintiff does allege that he received a salary of $12,500.00 monthly to perform financial modeling work for Blackspark under the Blackspark Agreement (Amended Complaint, ¶ 26), and claims that his salary at Sailbridge also was $12,500.00 monthly (Amended Complaint, ¶ 54). However, nowhere does Plaintiff allege any facts to show that Sailbridge assumed the Blackspark Agreement. Nor does Plaintiff allege that he, Blackspark and Sailbridge entered into any written agreement pursuant to which (1) Blackspark assigned the Blackspark Agreement to Sailbridge, (2) Sailbridge assumed the Blackspark Agreement, and (3) he consented to the assignment and assumption of the Blackspark Agreement. Nor does Plaintiff allege that he and Sailbridge entered into any separate agreement pursuant to which he would be paid $12,500.00 monthly. Absent such allegations, there is no basis to support Plaintiff's allegations that he was entitled to a salary of $12,500 monthly at Sailbridge to perform financial modeling work.

Further, to the extent that Plaintiff is attempting to assert that the Blackspark Agreement governed his employment at Sailbridge, he neither pleads the relevant terms of that agreement within the body of the Amended Complaint, nor does he incorporate the Blackspark Agreement by reference by attaching a copy of it to the Amended Complaint.

The Amended Complaint is utterly devoid of any factual context or content to substantiate Plaintiff's alleged claim for unpaid overtime wages. The only paragraphs that even touch on alleged overtime work do not provide the necessary specificity to move Plaintiff's claim across the line from "conceivable" to "plausible." *See DeJesus*, 726 F.3d at 88-90 (mere repetitions and rehashing of the language of the FLSA do not raise a plausible inference of an FLSA overtime violation); *Lundy*, 711 F.3d at 113-15 (no plausible claim that FLSA was

11

violated, because plaintiffs had "not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours").

The inherent implausibility of Plaintiff's entire claim for unpaid wages remains evident in Paragraph 57 of the Amended Complaint, in which Plaintiff alleges that "from October 2016 through July 2017 Sailbridge did not pay Plaintiff any compensation for work performed" (Amended Complaint, ¶ 57) (emphasis in original). It completely strains disbelief for Plaintiff to assert that he continued to work at Sailbridge for approximately *nine months* without being paid any compensation. Given the absence of any facts to support plausible claims for unpaid overtime wages, combined with the completely incredible allegation that Plaintiff remained at Sailbridge over nine months without being paid any compensation, Plaintiff's claims for unpaid overtime under the FLSA and the NYLL lack any "heft" and must be dismissed. *Twombly*, 550 U.S. at 557, 570; *see Iqbal*, 556 U.S. at 680.[7]

### 2. The Amended Complaint Does Not Allege Sufficient Facts to Hold Mr. Trujillo Liable as an "Employer."

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[8] "An entity 'employs' an individual under the FLSA if it 'suffers or permits' that individual to work." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. § 203(g)). For an individual (as opposed to an entity) to be an "employer" within the meaning of the statute, something more is

---

[7]    As the "'relevant portions of New York Labor Law do not diverge from the requirements of the FLSA,'" the determination that the FLSA overtime claim must be dismissed applies equally to the NYLL overtime claim as well. *See DeJesus*, 726 F.3d at 89 n.5 (quoting *Whalen v. J.P. Morgan Chase & Co.*, 569 F. Supp. 2d 327, 329 n.2 (W.D.N.Y. 2008), *rev'd on other grounds sub nom., Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009)).

[8]    The definition of "employer" under the NYLL is "any person ... employing any individual in any occupation, industry, trade, business or service" or "any individual ... acting as employer." N.Y. LAB. LAW §§ 190(3), 651(6). Courts have generally assumed that the test for "employer" status is the same under the FLSA and the NYLL. *See Ramirez v. RiverBay Corp.*, 35 F. Supp. 3d 513, 521 n.2 (S.D.N.Y. 2014).

required than evidence that the individual is an owner or officer of a company, or otherwise

makes corporate decisions that have nothing to do with an employee's function. As the Second

Circuit has recognized,

> [T]o be an "employer," an individual defendant must possess
> control over a company's actual "operations" in a manner that
> relates to a plaintiff's employment. It is appropriate, as we
> implicitly recognized in [*Herman v. RSR Sec. Servs.*, 172 F.3d 132
> (2d Cir. 1999)], to require some degree of individual involvement
> in a company in a manner that affects employment-related factors
> such as workplace conditions and operations, personnel, or
> compensation – even if this appears to establish a higher threshold
> for individual liability than for corporate "employer" status.

*Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013), *cert. denied,* 572 U.S. 1002 (2014).

Whether an employer-employee relationship exists for purposes of the FLSA is

determined by a four-factor test, which examines the "economic reality" of an employment

relationship:

> [W]hether the alleged employer (1) had the power to hire and fire
> the employees, (2) supervised and controlled employee work
> schedules or conditions of employment, (3) determined the rate
> and method of payment, and (4) maintained employment records.

*Id.* at 105 (quoting *Carter v. Dutchess Community Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). These

"nonexclusive and overlapping" factors are to be applied so as "to 'ensure that the economic

realities test ... is sufficiently comprehensive and flexible to give proper effect to the broad

language of the FLSA.'" *Irizarry*, 722 F.3d at 105 (quoting *Barfield v. N.Y. City Health &*

*Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)).

As set forth above, the Amended Complaint purports to set forth facts establishing Mr.

Trujillo's alleged control over Plaintiff's employment. However, the first example alleged by

Plaintiff – that "on July 16, 2015, Mr. Trujillo instructed Plaintiff to obtain a previously

requested information" from a client (Amended Complaint, ¶ 43) – actually occurred during the

period in which Plaintiff alleges that he was employed by ***Blackspark*** (Amended Complaint,

¶ 25). This "fact" cannot be used to establish that Mr. Trujillo exercised any control over

Plaintiff at Sailbridge. The remaining examples given by Plaintiff at best show discrete instances

over a nearly twenty-two month period in which Mr. Trujillo informally requested that Plaintiff

perform his duties, such as giving financial models to a co-worker (Amended Complaint, ¶ 44),

preparing a draft presentation (Amended Complaint, ¶ 45), updating reports (Amended

Complaint, ¶ 46), and researching the availability of health insurance (Amended Complaint,

¶ 48). Plaintiff alleges that he actually performed only one of these requests by Mr. Trujillo,

namely, updating reports (Amended Complaint, ¶ 46).

Beyond these facts, Plaintiff merely recites the four-factor economic reality test as

allegations that Mr. Trujillo "had the power to hire and fire the Plaintiff, supervised and

controlled the work and schedule and conditions of Plaintiff's employment, determined the rate

and method of pay, and maintained records of Plaintiff's employment" (Amended Complaint,

¶ 23), and that he "exercised sufficient operational control to be deemed Plaintiff's employer

under the FLSA and the NYLL" (Amended Complaint, ¶ 24). Plaintiff also relies on broad

conclusory statements that Mr. Trujillo had "authority to direct and supervise the Plaintiff's

activities," was "in charge" of the day-to-day operations of the Sailbridge office when

Barrionuevo was travelling, and "gave directions and instructions to the Plaintiff at least on a

weekly basis" (Amended Complaint, ¶¶ 41-42).

Even under the most flexible interpretations of the economic realities factors, these

allegations do not suffice to create an employer-employee relationship between Mr. Trujillo and

Plaintiff. Mr. Trujillo's status as a member/officer/owner of Sailbridge may vest him with the

kind of power to hire/fire employees and to control employees' work schedules or conditions of

14

employment that would typically be attributed to an "employer," but this alone does not establish that Mr. Trujillo exercised that control. Indeed, the one factual allegation that might tend show that Mr. Trujillo exercised control over Plaintiff – the request that Plaintiff accompany Mr. Trujillo on a business trip to Africa – is immediately countered by Plaintiff's declaration that he refused to do so. Plaintiff's ability to refuse to perform work for Mr. Trujillo – whether that work be making a business trip, researching the availability of health insurance coverage for employees, providing financial models to a co-worker or preparing a presentation for a client – certainly calls into question Mr. Trujillo's "control" over Plaintiff's work schedule or conditions of employment. Plaintiff also does not allege that Mr. Trujillo played any role in Plaintiff's "separation from employment"; rather, Plaintiff says nothing regarding the end of his employment at Sailbridge. While Plaintiff has made various allegations concerning Mr. Trujillo's control over the bank accounts of Sailbridge, including the claim that Mr. Trujillo signed three checks issued to Plaintiff by Sailbridge, Plaintiff cannot transform this single fact into a basis for finding that Mr. Trujillo was his employer.

In the absence of any allegations tending to show that Mr. Trujillo had any actual control over Plaintiff's employment at Sailbridge, the Amended Complaint lacks the specificity required to establish that Mr. Trujillo was Plaintiff's "employer." *See Vasto,* 2016 U.S. Dist. LEXIS 101875, at *10-*25 (rejecting claim of individual liability where complaint pleaded no facts to suggest individual had formal or operational control over employees' employment).

Thus, Plaintiff has failed to allege that Mr. Trujillo was his employer, and the FLSA and NYLL claims against him must be dismissed.

### 3. The Amended Complaint on Its Face Shows that Plaintiff Is Exempt from the Overtime Requirements of the FLSA and the NYLL.

The overtime protections of the FLSA do not apply to certain categories of employees, including individuals engaged "in a bona fide executive, administrative, or professional capacity." *Siji Yu v. Knighted LLC*, No. 15-CV-9340 (KMK), 2017 U.S. Dist. LEXIS 23006, at *23 (S.D.N.Y. Feb. 16, 2017) (quoting 29 U.S.C. § 213(a)(1)). Certain highly compensated employees also are exempted from the overtime requirements. *McGuirk v. Swiss Re Fin. Servs., Corp.*, No. 14 Civ. 9516 (CM), 2016 U.S. Dist. LEXIS 81338, at *42-*43 & n.2 (S.D.N.Y. Jun. 17, 2016), *aff'd*, 699 F. App'x 55 (2d Cir. 2017). From the face of the Amended Complaint, both exemptions apply to Plaintiff.

Plaintiff has alleged that his monthly salary at Blackspark was $12,500.00 (Amended Complaint, ¶ 26), and implies that his monthly salary at Sailbridge also was $12,500.00 (Amended Complaint, ¶¶ 54, 74, 76). This represents an annual salary of $150,000.00. Plaintiff also has alleged that he had the title of "Managing Director" at Sailbridge (Amended Complaint, ¶ 39), and that he performed "financial modeling work" (Amended Complaint, ¶¶ 40, 44). These allegations show that Plaintiff falls under either the "administrative" exemption or the "highly compensated individual" exemption (or both) under the FLSA. Consequently, Plaintiff has no claim for allegedly unpaid overtime wages under the FLSA and the NYLL.

An "administrative employee" is one (1) who is compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *McGuirk*, 2016 U.S. Dist. LEXIS 81338, at *43 n.2; *Henderson v. Transp. Group*, No. 09 Civ. 7328 (DLC), 2010 U.S. Dist.

LEXIS 66109, at \*12 (S.D.N.Y. July 1, 2010).  A "highly compensated employee" is one whose

total annual compensation is at least \$134,004 and who regularly performs any one or more of

the exempt duties or responsibilities of an executive, administrative, or professional employee.

*McGuirk*, 2016 U.S. Dist. LEXIS 81338, at \*42-\*43 & n.2; *see* 29 C.F.R. § 541.601(a).

      The regulations promulgated under the FLSA provide many examples of areas that fall

under the administrative exemption from the overtime requirements.  One such example covers

individuals employed in the financial services industry:

> Employees in the financial services industry generally meet the
> duties requirements for the administrative exemption if their duties
> include work such as collecting and analyzing information
> regarding the customer's income, assets, investments or debts;
> determining which financial products best meet the customer's
> needs and financial circumstances; advising the customer
> regarding the advantages and disadvantages of different financial
> products; and marketing, servicing or promoting the employer's
> financial products.  However, an employee whose primary duty is
> selling financial products does not qualify for the administrative
> exemption.

29 C.F.R. § 541.203(b).

      While exemptions from the overtime requirements of the FLSA are affirmative defenses,

dismissal of a FLSA claim on a Rule 12(b)(6) motion is appropriate if the exemption appears on

the face of the complaint.  *See McGuirk*, 2016 U.S. Dist. LEXIS 81338, at \*42-\*43 (dismissing

FLSA claim where complaint and public decision of administrative law judge demonstrated that

plaintiff was a "highly compensated employee"); *Chen v. Major League Baseball*, 6 F. Supp. 3d

449, 454, 460 (S.D.N.Y. 2014) (dismissing FLSA claim where plaintiff's own pleadings

established exemption for "amusement or recreational establishment"), *aff'd*, 798 F.3d 72 (2d

Cir. 2015).

      Here, the alleged facts are that Plaintiff's annual salary was \$150,000.000, well in excess

of the salary requirement for both the administrative and the highly compensated employee

exemptions. The title that Plaintiff alleges he had – "Managing Director" – is one that generally connotes the ability to exercise discretion and independent judgment with respect to matters of significance.[9]

Plaintiff alleges that he performed "financial modeling work" for Sailbridge (Amended Complaint, ¶ 40), and has provided examples of that work, such as obtaining information from a client (Amended Complaint, ¶ 43), giving financial models to a co-worker (Amended Complaint, ¶ 44), preparing a draft presentation (Amended Complaint, ¶ 45), and updating reports (Amended Complaint, ¶ 46). These activities are all classic examples of work done by employees in the financial services industry (collecting and analyzing information regarding a client's income, assets, investments or debts). Additionally, Plaintiff claims that Mr. Trujillo "ordered" him "to search for a medical insurance provider to cover Sailbridge employees" (Amended Complaint, ¶ 48), yet Plaintiff does not allege that Mr. Trujillo gave him any specific instructions or prescribed procedures for carrying out this task. This assignment falls within the scope of duties performed by an executive assistant or administrative assistant to a business owner, and also is covered by the administrative exemption. *See* 29 C.F.R. § 541.203(d).

Because Plaintiff's own pleadings show both that he is highly compensated and that the duties he regularly performs are the exempt duties of an administrative employee in the financial services industry, he is exempt from the overtime requirements of the FLSA. For this reason, Plaintiff's claims for unpaid overtime under the FLSA and the NYLL must be dismissed.

## B.    BLACKSPARK AND BARRIONUEVO ARE NECESSARY PARTIES

The Amended Complaint contains fabricated allegations of alleged wrongdoings by Mr. Trujillo, while scrupulously attempting to deflect any attention from the corporate entity with

---

[9]    The highly compensated individual exemption does not require the exercise of discretion and independent judgment. *See McGuirk*, 2016 U.S. Dist. LEXIS 81338, at *43 n.2.

whom Plaintiff originally had a contract – Blackspark – and the individual who truly exercised

control over Plaintiff's employment at Sailbridge – Barrionuevo.  As set forth in the Trujillo

Affidavit, Barrionuevo's conduct, in particular, is central to Plaintiff's claims in this action.  Yet

Plaintiff has named neither Blackspark nor Barrionuevo as a party, despite having had the

opportunity to do so.  Accordingly, the Amended Complaint should be dismissed pursuant to

Rule 12(b)(7).

Under Rule 12(b)(7), courts are required to dismiss an action for failure to join a

necessary party under Rule 19 of the Federal Rules of Civil Procedure, FED. R. CIV. P. 19; *see*

*Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 U.S. Dist. LEXIS 50396, at *40 (S.D.N.Y.

Mar. 31, 2017).  There are three components of Rule 19(a) that courts assess to determine

whether an absent party is required.  If any of the three components are satisfied, the absentee

party constitutes a required party to the litigation:

> The first component asks whether the court can afford complete
> relief in the absence of the non-party. … The second component
> focuses on whether the non-party's absence will impair or impede
> its ability to protect its interests. … The third component asks
> whether the existing parties would be subject to "double, multiple,
> or otherwise inconsistent obligations."

*Giuliano*, No. 16 CV 0859 (NSR), 2017 U.S. Dist. LEXIS 50396, at *40 (quoting Rule

19(a)(1)(B)(ii); other internal citations omitted).

As for the first component, this Court cannot afford complete relief in the absence of

Blackspark and Barrionuevo.  Plaintiff does not allege in the Amended Complaint that Sailbridge

assumed the Blackspark Agreement, yet Plaintiff appears to be seeking to enforce rights that he

has under that very Agreement.  To the best of Mr. Trujillo's knowledge, Sailbridge did not

assume the Blackspark Agreement (Trujillo Affidavit, ¶ 19).  Consequently, Blackspark must be

a party to this case so that its obligations, if any, under the Blackspark Agreement may be

19

adjudicated.  Further, the Trujillo Affidavit makes clear that it is Barronuevo's conduct that is central to all of Plaintiff's claims (Trujillo Affidavit, ¶¶ 15-16, 20-55).  *See Circle Indus., Div. of Nastasi-White, Inc. v. City Federal Sav. Bank*, 749 F. Supp. 447, 456-57 (E.D.N.Y. 1990) (missing party was the only entity whose conduct was relevant to the plaintiff's claims, and complete relief could not be granted without it), *aff'd,* 931 F.2d 7 (2d Cir. 1991).

Regarding the second component – whether Blackspark's and Barrionuevo's absence will impede or impair their ability to protect their interests – Sailbridge and Mr. Trujillo have every interest – and every right – to defend against Plaintiff's claims by asserting the liability of Blackspark and Barrionuevo.  The court in *Circle Industries,* in determining whether the missing party's interests would be protected in its absence, noted that the remaining defendants were

> [U]nlikely to protect [the missing party's] interest in [the missing party's] absence, given their desire to insure that any finding of wrongdoing is established only as to [the missing party].  Even though in its absence a judgment will not be res judicata, it is in [the missing party's] interest to be present when [plaintiff's] claims against the remaining defendants -- claims principally based on [the missing party's] conduct -- are adjudicated

*Id.* at 457.

Finally, there is a real possibility of harm – the third component – to Sailbridge and Mr. Trujillo if this action proceeds without Blackspark and Barrionuevo.  Plaintiff has been long familiar with both Blackspark and Barrionuevo (Trujillo Affidavit, ¶¶ 10-12).  Their absences from this litigation, combined with an Amended Complaint that scrupulously avoids any intimation that they should be parties to it while heaping allegations of fraud and other misconduct against Mr. Trujillo, raise serious questions as to whether there have been any backroom dealings between Plaintiff and Barrionuevo at the expense of Sailbridge and Mr. Trujillo.  Indeed, many of the "facts" asserted in the Amended Complaint concern matters that

Plaintiff could not have known unless they were told to him by Barrionuevo.[10]  It is possible that Sailbridge and/or Mr. Trujillo may be precluded in some way from seeking rights of contribution and/or indemnity from Blackspark and/or Barrionuevo in respect of Plaintiff's claims if they are not made Defendants.  There may also be other, unknown contingencies arising from the absence of Blackspark and/or Barrionuevo from this action.  As a result, Sailbridge and Mr. Trujillo could be subjected to inconsistent obligations because the parties who bear full responsibility to Plaintiff – Blackspark and Barrionuevo – are not part of this action.  Consequently, the Amended Complaint should be dismissed.

### C.   THE AMENDED COMPLAINT FAILS TO STATE CLAIMS UNDER THE NEW YORK DEBTOR & CREDITOR LAW.

Rather than correcting the deficiencies in the original Complaint, Plaintiff added two new causes of action to the Amended Complaint under the New York Debtor & Creditor Law against Mr. Trujillo.  Plaintiff makes multiple new allegations throughout the Amended Complaint that "upon information and belief," Mr. Trujillo conveyed various assets from Sailbridge to himself or to a company that he allegedly controlled (Amended Complaint, ¶¶ 66-69, 81, 125-26).  Plaintiff then concludes from his speculative allegations that these supposed transfers were all made "without fair consideration" (Amended Complaint, ¶ 129), which left Sailbridge with "unreasonably small capital" (Amended Complaint, ¶ 133), and that therefore the purported conveyances were made "with actual intent to defraud present and future creditors" (Amended Complaint, ¶ 137).

Plaintiff's claims against Mr. Trujillo are subject to the same *Twombly/Iqbal* standard of plausibility that defeated his FLSA claims.  The vast majority of his allegations concerning

---

[10]   If Barrionuevo has collaborated with Plaintiff to concoct a case against Sailbridge, this also may have implications with respect to his fiduciary duties to Sailbridge.

fraudulent conveyances made "without fair consideration" by Mr. Trujillo are asserted "upon information and belief." Unfortunately, Plaintiff's mere "belief" and conclusory allegations that these transfers were without fair consideration does not suffice to state a claim for a fraudulent conveyance under the New York Debtor & Creditor Law. *RTN Networks, LLC v Telco Group, Inc.*, 126 A.D.3d 477, 478, 5 N.Y.S.3d 80, 81 (1st Dep't 2015); *Jaliman v D.H. Blair & Co.*, 105 A.D.3d 646, 647, 964 N.Y.S.2d 112, 114 (1st Dep't 2013); *C&K Realty Co. v. ISFC Fabrics Corp.*, 66 A.D.2d 697, 698, 411 N.Y.S.2d 257, 259 (1st Dep't 1978). The only factual allegations that Plaintiff makes are that Mr. Trujillo conveyed tangible property, consisting of office equipment, furniture, televisions and insurance proceeds, to himself. Without some factual – as opposed to speculative or conclusory – predicate for asserting that these transfers were made without fair consideration or with intent to defraud creditors, Plaintiff cannot plausibly allege claims against Mr. Trujillo under the Debtor & Creditor Law.

Consequently, Plaintiff's new claims under the New York Debtor & Creditor Law must be dismissed pursuant to Rule 12(b)(6).

### D.   THIS COURT SHOULD DECLINE TO EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER THE NEW YORK CLAIMS

For the reasons stated above, Plaintiff's claim for overtime wages under the FLSA and the NYLL should be dismissed as against both Sailbridge and Mr. Trujillo. Without the FLSA claim that formed the sole basis of this Court's original jurisdiction over the Amended Complaint, this Court should, in its discretion, decline to exercise supplemental jurisdiction over all Plaintiff's claims under the NYLL and New York common law, including Plaintiff's new claims under the New York Debtor & Creditor Law. *See Chen*, 6 F. Supp. 3d at 460-61 (appropriate to decline to exercise supplemental jurisdiction over state-law claims when court

has dismissed all claims over which it had original jurisdiction at an early stage of the litigation).[11]

## IV.     CONCLUSION

Accordingly, Defendants respectfully request this Court grant their Motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) and Rule 12(b)(7) of the Federal Rules of Civil Procedure in its entirety, and request that the Court grant such other and further relief as it deems just and proper.

Dated: New York, New York
      August 17, 2018

                                     PHILLIPS NIZER LLP

                                     By: _____

                                        Laura E. Longobardi
                                        *LLongobardi@phillipsnizer.com*
                                        Regina E. Faul
                                        *RFaul@phillipsnizer.com*
                                        485 Lexington Avenue, 14th Floor
                                        New York, New York 10017
                                        Telephone:  (212) 977-9700
                                        Telecopier:  (212) 262-5152

                                        *Attorneys for Defendants Juan Manuel Trujillo and Sailbridge Capital, LLC*

To:   **MOSER LAW FIRM, P.C.**
      Steven John Moser, Esq.
      3 School Street, Suite 207B
      Glen Cove, New York 11542
      (516) 671-1150
      smoser@moseremploymentlaw.com

---

[11]  Further, this Court may lack jurisdiction over Plaintiff's new claims under the Debtor & Creditor Law entirely, as supplemental jurisdiction exists only "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  Plaintiff's assertion that Mr. Trujillo conveyed property belonging to Sailbridge to himself "without fair consideration," thus rendering Sailbridge insolvent and constituting a fraud on Sailbridge's creditors, are not related to the only claim giving rise to the original jurisdiction of this Court, namely, the alleged failure to pay overtime wages in violation of the FLSA.

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2018, I caused a true and correct copy of the **Defendants' Memorandum of Law in Support of Motion to Dismiss the Amended Complaint Pursuant to Rule 12(b)(6) and Rule 12(b)(7),** to be served upon Plaintiff Ignacio Granda ("Plaintiff") by service upon Plaintiff's counsel as follows:  **by electronic mail and by U.S. First-Class Mail**, addressed to

> **MOSER LAW FIRM, P.C.**
> Steven John Moser, Esq.
> 3 School Street, Suite 207B
> Glen Cove, New York 11542
> (516) 671-1150
> smoser@moseremploymentlaw.com

LAURA E. LONGOBARDI