UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IGNACIO GRANDA,

                Plaintiff,

– against –

JUAN MANUEL TRUJILLO, SAILBRIDGE
CAPITAL, LLC, and JOE DOE CORPORATIONS
NOS. 1-10,

                Defendants.

18-CV-03949 (PAE) (RWL)

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
THE AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM AND
<u>FAILURE TO NAME NECESSARY PARTIES</u>**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ............................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 1

    A.  THE TOTALITY OF ALLEGATIONS IN THE AMENDED COMPLAINT DO NOT STATE A PLAUSIBLE CLAIM FOR OVERTIME COMPENSATION UNDER THE FLSA OR THE NYLL. .............................................................................. 1

        1.  Plaintiff Has Not Sufficiently Alleged that He Worked More than Forty Hours in a Single Workweek. ....................................................................... 2

        2.  Plaintiff's Amended Complaint Shows on its Face that He Was an Exempt Employee. ............................................................................................... 3

    B.  BLACKSPARK AND BARRIONUEVO ARE NECESSARY PARTIES. ............ 5

        1.  Barrionuevo ................................................................................................ 5

        2.  Blackspark .................................................................................................. 7

    C.  THE AMENDED COMPLAINT FAILS TO STATE CLAIMS UNDER THE NEW YORK DEBTOR & CREDITOR LAW. ...................................................... 9

    D.  THIS COURT SHOULD DECLINE TO EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER THE NEW YORK CLAIMS. ........................................ 10

III. CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 2

*Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 101 S. Ct. 1437 (1981) ........................ 2, 3

*Bowen v. Baldwin Union Free Sch. Dist.*, CV 15-6829 (JMA) (GRB), 2017 U.S. Dist. LEXIS 136374 (E.D.N.Y. Aug. 23, 2017) ............................................................................ 2

*Chen v. Major League Baseball*, 6 F. Supp. 3d 449 (S.D.N.Y. 2014), *aff'd*, 798 F.3d 72 (2d Cir. 2015) ............................................................................................................. 4

*DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85 (2d Cir. 2013), *cert. denied,* 571 U.S. 1128 (2014) .................................................................................................................................. 3

*Encino Motorcars, LLC v. Navarro*, 128 S. Ct. 1134 (2018) ................................................... 4

*Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 U.S. Dist. LEXIS 50396 (S.D.N.Y. Mar. 31, 2017) ..................................................................................................................... 8

*Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2d Cir. 1999) ......................................................... 8

*Liberty Mut. Ins. Co. v. Horizon Bus Co.*, CV 10-0449 (JS) (WDW), 2011 U.S. Dist. LEXIS 31569 (E.D.N.Y. Feb, 22, 2011) ........................................................................... 10

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) ................ 2, 3

*Murray Eng'g P.C. v. Remke*, 17 Civ. 6267 (KPF), 2018 U.S. Dist. LEXIS 134404 (S.D.N.Y. Aug. 9, 2018) ................................................................................................... 9

*Sharp Int'l* ................................................................................................................................ 9

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005) ..................................................................................................................... 9

*Thomas v. Bed Bath & Beyond, Inc.*, 309 F. Supp. 3d 121 (S.D.N.Y. 2018) ............................ 4

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198 (S.D.N.Y.2002) ................................................................................................................ 10

*Wilk v. VIP Health Care Servs.*, 10 Civ. 5530 (ILG) (JMA), 2012 U.S. Dist. LEXIS 21630 (E.D.N.Y. Feb.21, 2012) ......................................................................................... 6

**STATUTES**

N.Y. DEBT. & CRED. LAW § 276 ............................................................................................. 10

N.Y. DEBT. & CRED. LAW §§ 273-74 ........................................................................................ 9

**RULES**

FED. R. CIV. P. 12(b)(6) ............................................................................................................ 1

FED. R. CIV. P. 12(b)(7) ............................................................................................................ 1

FED. R. CIV. P. 19 ................................................................................................................. 8, 9

FED. R. CIV. P. 20 .......................................................................................................................... 8
FED. R. CIV. P. 9(b) ..................................................................................................................... 10
**REGULATIONS**

29 C.F.R. § 541.203(b) ................................................................................................................... 4
29 C.F.R. § 541.602 ....................................................................................................................... 4
29 C.F.R. § 541.700(a).................................................................................................................... 4

I.      PRELIMINARY STATEMENT

Sailbridge Capital, LLC ("Sailbridge") and Juan Manuel Trujillo ("Mr. Trujillo") (collectively, the "Defendants") submit this Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint ("Defendants' Revised Motion") pursuant to Rule 12(b)(6) and Rule 12(b)(7) of the Federal Rules of Civil Procedure, FED. R. CIV. P. 12(b)(6), (7).[1]

Plaintiff's continued refusal to bring in Barrionuevo and Blackspark as defendants despite repeated demands and opportunities is extraordinary – and telling. It is most odd, to say the least, that a purported wage-and-hour plaintiff would be reluctant to sue potential corporate and individual defendants who may have liability to that plaintiff for a failure to pay his wages. This refusal can only be explained by what Defendants believe to be the case – Plaintiff is colluding with his *real* employer – Barrionuevo, who was ousted from Sailbridge – to concoct a case as a vendetta against the Defendants.

II.     **ARGUMENT**

   A.   **THE TOTALITY OF ALLEGATIONS IN THE AMENDED COMPLAINT DO NOT STATE A PLAUSIBLE CLAIM FOR OVERTIME COMPENSATION UNDER THE FLSA OR THE NYLL.**

The Amended Complaint relates a straight-forward story. Plaintiff worked at a start-up investment management firm, where he held the title of "Managing Director." He primarily performed financial modeling work and prepared presentations and other documents. He often worked more than 40 hours per week, and "during the week of Thanksgiving 2017 Plaintiff worked at least 65-70 hours" (Amended Complaint, ¶¶ 26, 39-40, 49-50; *see* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint

---

[1] Capitalized terms not otherwise defined in this Reply Memorandum have the definitions stated in Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, dated August 17, 2018 ("Defendants' MOL").

("Plaintiff's Opp."), at 4, 6). Plaintiff received a monthly salary of $12,500.00, although he never received his full monthly salary from Sailbridge. He was not paid overtime, and during the period from October 2016 through July 2017, he did not receive any compensation for the work he performed (Amended Complaint, ¶¶ 26, 51-52, 54-55, and 57; Plaintiff's Opp., at 5, 6-7). Plaintiff had knowledge of Sailbridge's financial and management situations (Amended Complaint, ¶¶ 60, 62-66, 68, 88).

Following *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny in the Second Circuit, the touchstone of an adequately pleaded complaint remains plausibility. "Assessing the plausibility of an FLSA overtime claim 'is a **context-specific task** that requires the reviewing court to draw on its judicial experience and **common sense**.'" *Bowen v. Baldwin Union Free Sch. Dist.*, CV 15-6829 (JMA) (GRB), 2017 U.S. Dist. LEXIS 136374, at *10 (E.D.N.Y. Aug. 23, 2017) (emphasis added) (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679)).

### 1. Plaintiff Has Not Sufficiently Alleged that He Worked More than Forty Hours in a Single Workweek.

Plaintiff makes a solitary allegation that "during the week of Thanksgiving 2017 [he] worked at least 65-70 hours." While Plaintiff argues that his failure to specify the precise beginning of his workweek during "the week of Thanksgiving" is not "fatal" to his Complaint, as "what constitutes a 'work-week' is a 'mixed question[] of fact and law for the Court to decide'" (Plaintiff's Opp., at 6 (quoting *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743, 101 S. Ct. 1437, 1446 (1981)), this is not correct. The *Barrentine* Court observed that "FLSA claims typically involve complex mixed questions of fact and law -- e. g., what constitutes the 'regular rate,' the 'work-week,' or 'principal' rather than 'preliminary or postliminary' activities."

2

*Barrentine,* 450 U.S. at 743.  The "factual" question regarding Plaintiff's workweek concerns which days of the calendar week it regularly started and ended.  Plaintiff surely remembers the answer to this question without recourse to Defendants' records.  *Lundy* and its progeny require Plaintiff to provide such information in his Amended Complaint – he did not.  *See DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 90 (2d Cir. 2013) (requiring plaintiffs to draw on their memory in providing complaints with sufficiently developed factual allegations), *cert. denied,* 571 U.S. 1128 (2014).  If the "week of Thanksgiving 2017" spanned two of Plaintiff's regular workweeks (such that, for example, 35 hours were in one workweek, and 30 to 35 hours were in a second workweek), then as a matter of law, Plaintiff has not stated a plausible overtime violation.

### 2. Plaintiff's Amended Complaint Shows on its Face that He Was an Exempt Employee.

Plaintiff's own description of his primary duties – that he "primarily performed financial modeling work and prepared presentations and other documents" (Amended Complaint, ¶ 40); obtained information from a client (id., ¶ 43); prepared a "presentation draft for a potential Mexican client" (id., ¶ 45); and "updated reports and made changes to 'White Papers'" (id., ¶ 46) – establishes that he meets the "duties requirement" for the administrative exemption.  No further inquiry into factors identified by Plaintiff is necessary.  Section 541.700 of the Code of Federal Regulations simply defines how an employee's "primary duty" is determined for the purpose of ascertaining whether that "primary duty" is the performance of "exempt work."  *See* 29 C.F.R. § 541.700(a) (cited in Plaintiff's Opp, at 8).  In contrast, Section 541.203 provides examples of employees whose duties "generally meet the duties requirements for the administrative exemption."  *See* 29 C.F.R. § 541.203(b).  This includes employees in the financial services industry "if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts."  *Id*.  As the highly compensated executive

3

exemption includes the same duties requirement, Plaintiff's primary duties also satisfy that exemption.

Plaintiff's alleged salary also meets the "salary requirement" for both exemptions. Section 541.602 of the Code of Federal Regulations, cited by Plaintiff in his opposition, addresses situations in which an employer makes unauthorized deductions from a salaried employee's pay. *See* 29 C.F.R. § 541.602. This Court in *Thomas v. Bed Bath & Beyond, Inc.*, 309 F. Supp. 3d 121 (S.D.N.Y. 2018), considered the implications of docking a salaried worker's pay. The Court noted that

> "DOL regulations further provide that '[a]n employer who makes improper deductions from salary shall lose [the right to invoke certain FLSA exemptions] *if the facts demonstrate that the employer did not intend to pay employees on a salary basis*.'" [internal citations omitted] (emphasis added).

*Thomas*, 309 F. Supp. 3d at 136 (emphasis in original). Here, Plaintiff does not allege that the Defendants did not intend to pay him on a salary basis.

Finally, Plaintiff's assertion that exemptions under the FLSA must be "narrowly construed" (Plaintiff's Opp. at 7) is no longer a correct statement of law. The Supreme Court recently rejected the principle that exemptions must be construed narrowly "as a useful guidepost for interpreting the FLSA," stating that "exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement," and that the Court had "no license to give the exemption anything but a fair reading." *Encino Motorcars, LLC v. Navarro*, 128 S. Ct. 1134, 1142 (2018). Thus, giving a fair reading to the allegations in the Amended Complaint and the requirements for the administrative and highly compensated executive exemptions, Plaintiff is not entitled to overtime compensation. *See Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454, 460 (S.D.N.Y. 2014), *aff'd*, 798 F.3d 72 (2d Cir. 2015).

When viewed in context, Plaintiff's allegation that "during the week of Thanksgiving 2017 [he] worked at least 65-70 hours" does not plausibly establish an overtime claim. Plaintiff's story is of an individual (1) who was receiving a high salary on a regular basis, (2) who was performing duties that by definition satisfy the duties requirement for two exemptions, and (3) who possessed knowledge not typically held by individuals performing non-exempt duties in a business.  In particular, Plaintiff's allegation that he went *nine months* without receiving *any* compensation from Sailbridge gives rise to only one plausible inference – that Plaintiff was investing "sweat equity" in Sailbridge.  Given Plaintiff's allegation that Barrionuevo was his "advocate" during this period, one wonders what discussions Plaintiff and Barrionuevo may have had, and what Barrionuevo may have promised Plaintiff concerning his compensation.

It is beyond belief, and implausible in the extreme, that an individual who considered himself to be a non-exempt hourly employee of a business would remain in a job in which he was not paid for nine months.  The only plausible inference is that Plaintiff was not – and was never intended to be – a non-exempt employee entitled to receive overtime compensation. Plaintiff's claims for overtime compensation pursuant to the FLSA and the NYLL should be dismissed.

### B.     BLACKSPARK AND BARRIONUEVO ARE NECESSARY PARTIES.

#### 1.     Barrionuevo.

Plaintiff deliberately makes very few allegations in the Amended Complaint concerning Barrionuevo.  He acknowledges that Barrionuevo was the President of Blackspark (Amended Complaint, ¶ 28).  He states that Barrionuevo "was a part owner of Sailbridge," but that he "often traveled on Sailbridge business," leaving Mr. Trujillo "in charge" while he was away (*id.*, ¶ 44). Plaintiff alleges that "between October 2016 and July 2017, Barrionuevo repeatedly advocated

5

for the Plaintiff in meetings with Trujillo and made requests to Trujillo to pay the Plaintiff for work performed" (*id.*, ¶ 59). Plaintiff alleges that "[u]pon information and belief, Trujillo became the exclusive signatory on the Sailbridge bank accounts **in January 2018**" (*id.*, ¶ 60 (emphasis added)), and that "[o]n or about February 6, 2018, Barrionuevo resigned" (*id.*, ¶ 88).

The logical implication of these allegations is that during the time that Plaintiff claims he received no compensation, **Barrionuevo** was Plaintiff's employer. Plaintiff's allegations that Barrionuevo "advocated" on his behalf establish that Barrionuevo "had influence over hiring and firing decisions, and the terms and conditions of [his] employment—including how, when, and how much [he] was to be paid," *Wilk v. VIP Health Care Servs.*, 10 Civ. 5530 (ILG) (JMA), 2012 U.S. Dist. LEXIS 21630, at *28 (E.D.N.Y. Feb.21, 2012). Consequently, Plaintiff's own allegations put Barrionuevo on equal footing with Mr. Trujillo as a potential co-employer, as Plaintiff pleads that Barrionuevo had the same control over Plaintiff's activities and over the Sailbridge bank accounts, as did Mr. Trujillo.

Most plaintiffs, when presented with two co-owners of a business as potential defendants, do not think twice about naming both in a lawsuit. Yet Plaintiff has engaged in a most "un-plaintiff-like" behavior here: he has charged Mr. Trujillo with being personally liable as his employer, while sheltering Barrionuevo from any hint of wrongdoing. Plaintiff's curious behavior is further evidenced in the allegation that "[u]pon information and belief, Sailbridge did not pay the Plaintiff any compensation after October 2017" (Amended Complaint., ¶ 82). Plaintiff should surely know whether he received any compensation from Sailbridge after October 2017, making this a particularly odd statement for Plaintiff to make "upon information and belief" – unless Plaintiff is concealing the possibility that he received compensation for his work at Sailbridge *from someone else* after October 2017.

6

Finally, as noted in Mr. Trujillo's affidavit, Plaintiff demonstrates remarkable knowledge concerning confidential, nonpublic, financial and institutional information of Sailbridge. Plaintiff only could have acquired this knowledge if he was privy to this information as a managerial-level employee at Sailbridge (in which case he would be exempt from the overtime requirements), or if he was told this information by an inside source – Barrionuevo. Either way, Barrionuevo qualifies as Plaintiff's employer, and properly belongs in this action as a party defendant.

### 2. **Blackspark.**

Plaintiff alleged in his original Complaint that he had been employed at Blackspark pursuant to the Blackspark Agreement (Complaint, ¶ 25). The Amended Complaint alleges that pursuant to that agreement, Blackspark "paid Plaintiff a salary of $12,500.00 monthly to perform financial modeling work with the title of Managing Director" (Amended Complaint, 26). Plaintiff has never attached a copy of the Blackspark Agreement to the Complaint or to the Amended Complaint; yet, the only terms pursuant to which he claims to be employed by Sailbridge are the terms of the Blackspark Agreement. If Plaintiff is asserting that the Blackspark Agreement controls his employment relationship with Sailbridge, then Blackspark – and through Blackspark, Barrionuevo, who is the sole member of Blackspark – is the only party contractually obligated to Plaintiff.[2]

---

[2] Plaintiff's inclusion of a pre-litigation letter from Defendants' prior counsel attempts to direct attention away from Blackspark's and Barrionuevo's participation in his underlying claims. First, any position taken by Defendants in that letter concerning Plaintiff's status as an independent contractor is not contradicted by Defendants' position in Defendants' Revised Motion, which assumes, based on the Amended Complaint, that Plaintiff is an employee. Second, the statement in the letter that Plaintiff was paid "in accordance with the timing and in the manner agreed upon between the parties" (Plaintiff's Opp., at 13), does not contradict Defendants' position that it was Barrionuevo – on behalf of Sailbridge – who reached the purported agreement with Plaintiff. Finally, Plaintiff's use of the letter is inappropriate, as it was a response to a pre-litigation settlement demand by Plaintiff's counsel (notably *not* attached to Plaintiff's Opp.). While the letter did not carry a specific reference to the inadmissibility or use of settlement materials, it expressly reserved all of Sailbridge's "available statutory, legal, and equitable rights and remedies that it may have arising out of or in any way relating to the Company's relationship with [Plaintiff]."

7

Plaintiff argues that Barrionuevo and Blackspark are only permissive parties under Rule 20 of the Federal Rules of Civil Procedure, FED. R. CIV. P. 20, not indispensable or necessary parties under Rule 19, FED. R. CIV. P. 19.  This argument ignores the real harm that Defendants may suffer if Barrionuevo and Blackspark are not added as party defendants in this action.  As noted in Defendants' MOL, Defendants may be precluded from asserting a third-party complaint against Barrionuevo and/or Blackspark for contribution and/or indemnification as joint-feasors.  Case law in the Second Circuit states that a co-employer has no rights to such relief under the FLSA.  *See Herman v. RSR Sec. Servs.*, 172 F.3d 132, 143-44 (2d Cir. 1999) (concluding that there "is no right of contribution or indemnification for employers found liable under the FLSA").  Defendants could be made liable for multiple or otherwise inconsistent obligations, without having an opportunity to recover from joint – or primary – tortfeasors.  There may also be other, unknown contingencies arising from the absence of Blackspark and/or Barrionuevo from this action.  The only means of redress that the Defendants have of ensuring that they are not made liable for Barrionuevo's or Blackspark's wrongdoing is to compel Plaintiff to add them as named defendants, and to have a jury determine the issues as among them.  *See Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 U.S. Dist. LEXIS 50396, at *40 (S.D.N.Y. Mar. 31, 2017) (if any of the three components of Rule 19(a) that courts assess to determine whether an absent party is required are satisfied, the absentee party must be added to the litigation; third component asks whether the existing parties would be subject to "double, multiple, or otherwise inconsistent obligations") (quoting Rule 19 (a)(1)(B)(ii)).  Consequently, if Barrionuevo and Blackspark are not named as defendants in this action, the Amended Complaint should be dismissed.

### C.  THE AMENDED COMPLAINT FAILS TO STATE CLAIMS UNDER THE NEW YORK DEBTOR & CREDITOR LAW.

As stated in Defendants' MOL, assertions "upon information and belief" and conclusory allegations that certain transfers allegedly were made by Mr. Trujillo without fair consideration does not suffice to state a claim for a fraudulent conveyance under the New York Debtor & Creditor Law.  Plaintiff's claims fare no better under the Federal Rules of Civil Procedure and Second Circuit jurisprudence.

Plaintiff purports to state a claim of "presumed fraudulent conveyances" in violation of Section 273 and Section 274 of the New York Debtor & Creditor Law, N.Y. DEBT. & CRED. LAW §§ 273-74.  Such a claim requires, among other things, that Plaintiff adequately plead that the allegedly fraudulent conveyances were made without fair consideration.  *See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53 (2d Cir. 2005).  More is needed than just bald assertions that "the conveyances were made without fair consideration."  Plaintiff also must allege that the recipient of the conveyance did not convey property or discharge an antecedent debt in a good faith exchange of equivalent value.  *Id.*  Plaintiff has not done this, therefore, this claim should be dismissed.

Plaintiff also alleges a claim of actual fraudulent conveyances in violation of Section 276 of the New York Debtor & Creditor Law, N.Y. DEBT. & CRED. LAW § 276.  This claim is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, FED. R. CIV. P. 9(b).  *See Sharp Int'l*, 403 F.3d at 56; *Murray Eng'g P.C. v. Remke*, 17 Civ. 6267 (KPF), 2018 U.S. Dist. LEXIS 134404, at *41 (S.D.N.Y. Aug. 9, 2018).  "Courts have dismissed claims for fraudulent conveyance where the complaint did not provide particulars or 'specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent, or the consideration paid.'" *Liberty Mut. Ins. Co. v. Horizon Bus Co.*, CV 10-

0449 (JS) (WDW), 2011 U.S. Dist. LEXIS 31569, at *7 (E.D.N.Y. Feb, 22, 2011) (quoting *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y.2002)).

Here, Plaintiff has not pleaded with any specificity the amount of the funds or the specific dates that he claims Mr. Trujillo transferred from Sailbridge to himself. Plaintiff does not allege when he purportedly delivered property belonging to Sailbridge to Mr. Trujillo. While Plaintiff claims that Mr. Trujillo "ordered" him to instruct a moving company to pay an insurance claim to Mr. Trujillo, Plaintiff never alleges if he actually gave that instruction to the moving company, or if, assuming he did, in fact the moving company paid the insurance claim to Mr. Trujillo. This claim therefore should be dismissed.

Finally, Plaintiff argues that his allegations "upon information and belief" are permitted when they are "accompanied by a statement of the facts upon which the belief is based" (Plaintiff's Opp., at 15). However, as detailed in Defendants' MOL, the only factual allegations that Plaintiff makes in the Amended Complaint are that Mr. Trujillo conveyed tangible property, consisting of office equipment, furniture, televisions and insurance proceeds, to himself. These do not suffice to support Plaintiff's belief that the conveyances were fraudulent.

For these reasons, Plaintiff cannot plausibly allege claims against Mr. Trujillo under the Debtor & Creditor Law.

### D. THIS COURT SHOULD DECLINE TO EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER THE NEW YORK CLAIMS.

For the reasons stated above and in Defendants' MOL, Plaintiff's claim for overtime wages under the FLSA and the NYLL should be dismissed as against both Sailbridge and Mr. Trujillo. This Court should, in its discretion, decline to exercise supplemental jurisdiction over all Plaintiff's remaining claims under the NYLL and New York common law.

### III.     CONCLUSION

Accordingly, Defendants respectfully request this Court grant their Motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) and Rule 12(b)(7) of the Federal Rules of Civil Procedure in its entirety, and request that the Court grant such other and further relief as it deems just and proper.

Dated:  New York, New York
        September 7, 2018

PHILLIPS NIZER LLP

By:  *Laura E. Longobardi*
     Laura E. Longobardi
     *LLongobardi@phillipsnizer.com*
     Regina E. Faul
     *RFaul@phillipsnizer.com*
     485 Lexington Avenue, 14th Floor
     New York, New York 10017
     Telephone:  (212) 977-9700
     Telecopier:  (212) 262-5152

     *Attorneys for Defendants Juan Manuel Trujillo and Sailbridge Capital, LLC*

To:  **MOSER LAW FIRM, P.C.**
     Steven John Moser, Esq.
     3 School Street, Suite 207B
     Glen Cove, New York 11542
     (516) 671-1150
     smoser@moseremploymentlaw.com

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of September, 2018, I caused a true and correct copy of the **Defendants' Reply Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 12(b)(7),** to be served upon Plaintiff Ignacio Granda ("Plaintiff") by service upon Plaintiff's counsel as follows: **by electronic mail and by U.S. First-Class Mail**, addressed to

> **MOSER LAW FIRM, P.C.**
> Steven John Moser, Esq.
> 3 School Street, Suite 207B
> Glen Cove, New York 11542
> (516) 671-1150
> smoser@moseremploymentlaw.com

*Laura E. Longobardi*
LAURA E. LONGOBARDI